E-FILED; Baltimore City Circuit Court
Docket: 5/29/2025 10:25 AM; Submission: 5/29/2025 10:25 AM
Envelope: 21401385

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

**Ricky Keener**
C/O Bekman, Marder, Hopper, Malarkey & Perlin, L.L.C.
1829 Reisterstown Road, Suite 200
Baltimore, Maryland 21208

Plaintiff

v.

**Beth Tfiloh Congregation of Baltimore City, Inc.**
**3300 Old Court Road**
**Baltimore, Maryland 21208**

Serve On: Resident Agent
Northwest Registered Agent Service, inc.
5000 Thayer Center, Suite C
Oakland, Maryland 21550

and

**Gerald Ronkin**
**1716 Fairway Trace**
**Palmetto, Florida 34221**

and

**MARYLAND DEPARTMENT OF HUMAN SERVICES**

Serve: Rafael J. Lopez, in his official capacity as Secretary of the Maryland Department of Human Services
311 West Saratoga Street
Baltimore, MD 21201

and

**STATE OF MARYLAND**

Serve: Maryland State Treasurer

C-24-CV-25-004925
**Case Number: ______________**

| | |
|---|---|
| 80 Calvert Street, Room 442<br>Annapolis, MD 21401<br><br>Anthony G. Brown<br>Maryland Attorney General<br>Office of the Attorney General<br>of the State of Maryland<br>200 St. Paul Place<br>Baltimore, MD 21202<br><br>and<br><br>**BALTIMORE CITY DEPARTMENT OF SOCIAL SERVICES**<br>Talmadge Branch Building<br>1910 N. Broadway Street<br>Baltimore, MD 21213<br><br>Defendants | |

COMPLAINT AND ELECTION FOR JURY TRIAL

Plaintiff, Ricky Keener, by and through his counsel, Gregory G. Hopper, and Bekman, Marder, Hopper, Malarkey & Perlin, L.L.C., hereby files this Complaint and Election for Jury Trial against Defendants, Beth Tfiloh Congregation of Baltimore City, Inc., Gerald Ronkin, and, State of Maryland, Maryland Department of Human Services ("MD DHS" or "DHS"), and Baltimore City Department of Social Services ("BCDSS" or "DSS") (the State of Maryland, MD DHS and BCDSS are collectively referred to as "The State Defendants"), in support thereof, states and avers as follows:

Nature of Action

1. Plaintiff, Ricky Keener, brings this action against the Defendants pursuant to the Maryland Child Victims Act ("CVA"), codified at Md. Code Ann., Cts. & Jud. Proc. § 5-117.

2. While in foster care as a minor child, the Plaintiff was sexually abused by a social worker named Ed Dean, an employee of the State Defendants. Dean then introduced the Plaintiff to Gerald Ronkin, an employee of Beth Tfiloh Congregation of Baltimore City, Inc., who also sexually abused the Plaintiff from 1978 to 1980, while Plaintiff was a minor child, in his office at Beth Tfiloh Synagogue, in Baltimore, Maryland.

3. The Plaintiff is suing the State Defendants, among other reasons, for the manner in which the State Defendants operated the foster care system in Baltimore City, which placed children at risk for abuse and neglect, and in its selection and oversight of a social worker named Ed Dean, who sexually abused the Plaintiff and then engaged Mr. Ronkin to do the same.

4. Plaintiff is suing Beth Tfiloh Congregation of Baltimore City, Inc. because (1) it selected and employed Mr. Ronkin without conducting adequate investigations into his background and fitness to work with minor children; (2) its supervisors and managers failed to properly monitor and supervise him and to intervene based on the information that was known or knowable to them at the time; (3) some of its employees, who were Mr. Ronkin's coworkers, had concerns about his actions and conduct around minor children but failed to report them or take other actions to protect them; and (4) it created an environment for Mr. Ronkin to sexually abuse Mr. Keener and other potential victims. He is suing Mr. Ronkin because he was the person who abused him.

## Jurisdiction and Venue

5. This Court has personal jurisdiction over Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-102 and 6-103. This cause of action arises is for tortious injuries that occurred in the State of Maryland due to acts that occurred in the State of Maryland.

6. This Court has subject matter jurisdiction over this matter pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501.

7. Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-201 and 6-202.

Parties

8. Plaintiff, Ricky Keener, is a resident and citizen of the State of Maryland, and he was a resident and citizen of the State at all times relevant to this action. Mr. Keener lives and resides in Baltimore City, Maryland.

9. Plaintiff was born in May 1966, and the sexual abuse he endured occurred between 1978 and 1980. This means that Plaintiff was under the age of 18 years at all times relevant to this action, making him a "child" pursuant to Family Law § 5-701(e).

10. Defendant, Beth Tfiloh Congregation of Baltimore City, Inc., is a religious corporation created and existing under the laws of the State of Maryland. Its principal place of business is located at 3300 Old Court Road in Baltimore, Maryland. Though the synagogue is located in Baltimore County, Beth Tfiloh has substantial and sustained contacts with Baltimore City. It was founded in the Forest Park neighborhood of Baltimore City and was based there for more than forty years; it regularly partners with and grants money to The Associated Jewish Community Federation of Baltimore, which is located in Baltimore City; regularly hosts fundraising, social, and educational events in Baltimore City; it solicits and sends volunteers to charitable organizations in Baltimore City; it describes itself in some of its promotional material as representing the "Baltimore metropolitan area," which includes Baltimore City; and it solicits and has many members who live in Baltimore City.

11. At all times relevant to this action, Defendant Beth Tfiloh was Mr. Ronkin's actual and apparent principal, master, and employer, and also the actual and apparent principal, master, and employer of the administrative staff who worked with Mr. Ronkin at Beth Tfiloh. Defendant is vicariously liable for all of the tortious actions that these people committed within the scope of their employment.

12. Defendant, Gerald Ronkin, was a citizen and resident of the State of Maryland when he repeatedly sexually abused Plaintiff in his office and on the grounds at Beth Tfiloh. Based on information and belief, Mr. Ronkin moved to Florida and now resides in Palmetto, Florida.

13. Defendant State of Maryland (the "State") operates and controls the Maryland Department of Human Services and the Baltimore City Department of Social Services.

14. Defendant Maryland Department of Human Services is a State agency that administers and oversees the social services programs throughout Maryland.

15. Throughout the State, the Family Investment Administration and/or the Social Services Administration of DHS oversees the social services programs administered in each count and Baltimore City through local departments of social services.

16. DHS operates local offices in 24 counties throughout the State of Maryland, including in Baltimore City.

17. DHS's principal place of business is located at 25 South Charles Street in Baltimore City, Maryland.

18. DHS administers a range of statewide public assistance programs under the Human Services Article in each County. MD Code, HS §3-202. Its mission is to protect vulnerable citizens, such as children, from both economic and social hardship by providing various types of assistance and protective services, including foster care programs.

19. BCDSS is one of the twenty-four (24) local departments of social services located throughout the State of Maryland. Its purpose is to provide guidance on accessing the programs and resources available through DHS, including administering the local foster care services. BCDSS's principal place of business is in Baltimore City, Maryland.

20. In each Maryland county, including Baltimore City, the local department of social services is funded by the State.

21. In this case, DHS was responsible for overseeing BCDSS, as a program funded by the State for administering Maryland's child welfare programs and was involved in the placement of Plaintiff through its foster care system.

22. At all pertinent times, the State Defendants were collectively responsible for overseeing and managing the State's foster care program in Baltimore City.

## Facts Common to All Counts

### A. The State Defendants

23. At all pertinent times, the State Defendants were engaged in operating the foster program throughout Baltimore City. As a child, the Plaintiff was part of the foster care program run and operated by the State Defendants.

24. When the State Defendants take affirmative actions to remove a child in the State of Maryland from the custody of their parents and to place them into the foster care system that the State Defendants administer, the State Defendants engage in a special relationship with the child with attendant duties and responsibilities owed to the children in their care.

25. The foster care system is a temporary arrangement whereby children are removed from their current living situation and placed with an alternative caregiver who must be carefully

chosen, monitored and equipped by the State Defendants with resources to provide support, nurture and care for the child.

26. When the State Defendants act to remove children from their biological parents, the State Defendants undertake affirmative duties to take appropriate and reasonable actions to ensure the safety and well-being of each child in its care, control, and guardianship. That duty continues upon placement of the child in a foster care home, as the State Defendants are to maintain contact with the child to ensure the child's safety and wellbeing.

27. Essentially, the State Defendants become the custodian or temporary "parent," responsible for the children that are likewise fully dependent on the Defendants for their safety, protection, and support.

28. The State Defendants describe their role in the process as becoming a "guardian" for the child.

29. As such, the State Defendants assumed the rights and duties of parents (*in loco parentis*) while the Plaintiff was in the State Defendants' custody and control and owed the Plaintiff the same duty of care that is owed by parents to their children.

30. The removal and subsequent placement of children into foster care can be particularly harrowing for children, as they have often experienced trauma and abrupt removal from a prior home environment which ultimately deprived them of the relationships and surroundings for which they are most familiar and frequently cause great insecurity, uncertainty and vulnerability.

31. The State Defendants have a duty to protect these vulnerable children from further harm by having systems in place that ensure their safety and protection.

32. For decades, the State Defendants have had systemic failures in meeting their obligation to protect foster children from abuse and neglect.

33. The children needing foster placement needed the State Defendants' help. Instead, because of the State Defendants' failures in protecting children under their care – spanning decades – many of the foster children placed at foster homes were sexually abused, sending their lives into an even deeper spiral.

34. Instead of being helped, many foster children were sexually preyed upon in unthinkable ways.

35. Leading up to, and at all relevant times when the Plaintiff was sexually abused, the State Defendants knew, or should have known, that there existed systemic deficiencies in the manner in which its foster care system operated, that posed a significant risk to the health and safety of those children being placed in foster homes.

36. For decades, the State Defendants did nothing to correct the deficiencies.

37. Leading up to, and at all relevant times during, the State Defendants knew, or should have known, that the systemic deficiencies that existed within the foster care system posed significant dangers to the children involved. Yet, the State Defendants did nothing.

38. Leading up to, and at all relevant times, the State Defendants knew that the deficiencies that existed within the foster care system was a significant departure from all known generally accepted professional standards. Yet, for decades, the State Defendants did nothing.

39. The State Defendants' negligence extends far beyond their indifference to the safety of this Plaintiff. The State Defendants actively enabled the abuse of foster children by failing to take proactive and corrective measures to protect the safety of foster care children by running a woefully deficient program.

40. For decades, the State Defendants breached their obligations and exposed children to horrendous forms of sexual abuse in the foster care system.

41. During all relevant times, the State Defendants' leaders in position of authority have been at the helm of the inadequate and dangerous foster care system in Maryland.

42. The State Defendants failed to adequately screen and investigate the foster care families to determine if the environment was safe; failed to enact and enforce established safeguards to detect and prevent sexual abuse; failed to create and implement policies and procedures to reasonably screen and monitor foster care placement; failed to hire, train, monitor and supervise their employees to ensure they were appropriately overseeing children and that they were otherwise following policies and procedures; failed to have an adequate number of staff / employees to adequately ensure the safety of children; and by failing to respond and report to reports of abuse to name a few.

43. Even when risks were identified, the State Defendants inadequately addressed those known risks and failed to monitor interventions to determine whether they were effective.

44. The State Defendants have failed to provide the requisite oversight to meet their duties and responsibilities. Their collective negligence has enabled systemic sexual abuse to occur unchecked in multiple foster care facilities and homes and by their own employees causing devastating and lasting harm to numerous children, including the Plaintiff.

45. During the 1970s, there were widespread reports of children being abused and neglected in the foster care system, including in Maryland. In other words, there existed widespread deficiencies in the foster care system dating back to the 1970s, and before.

46. Reports and/or audits of the State Defendants' foster care system throughout the years have revealed consistent, system wide gaping holes that have placed children at risk for abuse and neglect, including the Plaintiff.

47. Reports and/or audits of the State Defendants' foster care system throughout the years have found consistent patterns where children were not having their needs met to protect their safety and to protect them from abuse and neglect, including:

a. Failing to maintain, complete, and keep adequate records, including records of abuse (e.g., poor record keeping);

b. Failing to ensure that minimal standards for regular face to face contact with children and care providers were being met. Reports reflect that face to face meetings were missing for nearly half of the children;

c. Failing to ensure that the foster care families were appropriately vetted. Reports have shown that half of the children were living with adults for whom no criminal background check could be found;

d. Failing to ensure that children were being seen for medical and other examinations. Reports have shown that no record of well child examinations were found in one-third of the files;

e. No record of an annual dental visit was available in 69% of the files;

f. When mental health treatment was recommended, in one-fourth of the cases there was no indication that the treatment had been provided;

g. Failing to ensure and document that children were attending school; and

h. Failing to ensure adequate resources were available to protect children. 97% of the caseworkers in Baltimore City, the jurisdiction serving the largest number of child welfare clients, reported inadequate physical resources (cars, office space, equipment, computers, supplies). Even outside of the City 84% of caseworkers statewide reported insufficient staff resources (caseworkers, paraprofessionals, transportation aides, clerks).

48. These problems, plus others, existed over the pertinent time period that the Plaintiff was in the foster care system in Baltimore City.

49. The problems are reflective of a foster care system that was, over the pertinent time period, broken in Maryland and broken in Baltimore City and that failed children, including the Plaintiff.

50. In addition to the above referenced problems, the Defendants had too few homes, too many children, were short staffed, were not able to adequately screen foster care families, were not able to follow-up with children placed in foster care families to ensure their safety and wellbeing, and were not able to adequately hire and oversee their own employees to ensure that children were being protected from abuse and neglect.

51. In addition, because of the deficiencies within the system itself, the State Defendants were not adequately equipped for investigating reports of abuse, removing children from homes when abuse was reported, and preventing children from being placed in foster homes when there were prior reports of abuse.

52. The State Defendants had constructive knowledge that these problems, and others, posed significant safety gaps that placed children, including the Plaintiff, at risk for abuse and neglect.

53. The State Defendants knew, and had warnings, that children in their foster system were being abused and neglected because their system was broken. Yet, nothing was done. These problems existed prior to, and during the time frame that the Plaintiff was in the foster care system.

54. The State Defendants maintained a culture of negligence, indifference and concealment that allowed abuse and neglect to persist unchecked. As a result, the Plaintiff was harmed in the very setting that was supposed to keep the Plaintiff safe.

55. The State Defendants' agents, including but not limited to their leaders supervisors, managers, case workers, social workers, and other related personnel, were directly responsible for Plaintiff's care, safety, and wellbeing.

56. The State Defendants' agents, including their leaders, supervisors and managers were responsible for ensuring that appropriate systems and safeguards were in place – and being followed – to protect children in the foster care system, including the Plaintiff, from abuse and neglect. The State Defendants are vicariously liable for the negligent acts and omissions of its agents, servants and employees.

B. **Ed Dean Sexually Abused the Plaintiff**

57. The Plaintiff was in the State Defendants' foster care program. Like many foster care children, the Plaintiff would be moved to various foster homes / facilities. This is how the Plaintiff encountered Ed Dean, who was employed as a social worker by the State Defendants.

58. Mr. Dean used his position of authority to begin sexually abusing the Plaintiff, including inappropriately touching and fondling the Plaintiff's private areas, and attempting to rape him. The sexual abuse started when the Plaintiff was approximately 11 or 12 years old, between 1978 and 1980.

59. Mr. Dean was able to carry out these acts, in part, because there was little to no oversight into his day to day activities. Indeed, Mr. Dean was able to pick the Plaintiff up from the various foster care families / facilities where the Plaintiff resided and take him to his own private residence to abuse him. These actions went completely unchecked by the State Defendants, which is emblematic of the overall broken foster care system that existed at the time.

60. In addition, it would have been extremely unusual for Mr. Dean to have removed the Plaintiff – a child - from a facility so that the Plaintiff could be taken to Mr. Dean's home – or

to have been transported to locations with Mr. Ronkin, discussed below. These type of activities never should have taken place had the State Defendants' implemented measures to ensure the Plaintiff's safety and wellbeing.

61. At one point, the Plaintiff was placed in a foster care group home called Facets, Inc. in Fallston, Maryland. As the Plaintiff's assigned social worker, Mr. Dean followed the Plaintiff to Facets.

**C. Dean and Ronkin**

62. At Facets, Mr. Dean introduced the Plaintiff to Gerald Ronkin. On information and belief, Mr. Dean and Mr. Ronkin were in a relationship with each other.

63. Defendant, Beth Tfiloh Congregation of Baltimore City, Inc., has owned and operated a synagogue and related facilities in Maryland for more than 100 years.

64. Beth Tfiloh employed Gerald Ronkin between 1978 and 1980. He worked in its administrative offices in a financial role, whether as a director, bookkeeper, or in some other role. Mr. Ronkin likely worked for more years than this, but Plaintiff does not have access to records indicating when Mr. Ronkin's employment started or ended.

65. Plaintiff resided in a group home located in Fallston, Maryland, during this time. He was born in 1966, so he was 12-years-old in 1978.

66. Between 1978 and 1980, Mr. Ronkin sexually molested, exploited, and committed criminal sexual offenses and unnatural or perverted sexual practices on Plaintiff multiple occasions, typically in his office or in other areas on Beth Tfiloh's property.

67. Over this time period, Mr. Dean and Mr. Ronkin would both, at the same time, commit sexual acts against the Plaintiff.

68. As a minor, Plaintiff could not provide consent.

69. Typically, at least at first, a staff member from the group home would drive Plaintiff from the group home to Beth Tfiloh, where he would transfer Plaintiff's care, custody, and control to Mr. Ronkin and Beth Tfiloh. Mr. Ronkin would bring Plaintiff into Beth Tfiloh, walk him through the halls by offices and desks where other Beth Tfiloh employees worked, usher Plaintiff into his office, and close the door. While inside the office, Mr. Ronkin sexually abused Plaintiff. After a period of time, Mr. Ronkin would open the door, usher Plaintiff out of his office, and reverse the process until he had Plaintiff in Beth Tfiloh's parking lot.

70. On other occasions, Mr. Ronkin would drive to Fallston to pick Plaintiff up from the group home. Mr. Ronkin would take him back to Beth Tfiloh, where the same sequence of events would occur.

71. Beth Tfiloh's leaders and employees worked throughout the building. They were in its open spaces, hallways, and offices. They were talking to one another, walking around, or sitting at their desks. And they recognized and knew each other.

72. It would have been highly unusual and notable that an adult man was bringing a 12-year-old boy into the office. Mr. Ronkin was not married. He did not have a son. And he worked in a financial role that would not require the assistance of a 12-year-old boy.

73. It would have been highly unusual and notable that an adult man bringing a 12-year-old boy into the office would close his door. There was nothing they could discuss in private, and no need for them to be alone where they could not be seen.

74. And it would have been incredibly unusual and notable that an adult man would need to bring a 12-year-old boy into the office and close his door repeatedly over the course of months.

75. There was no legitimate explanation for this occurring, much less occurring over the course of months. It would have been mentioned, discussed, and speculated about.

76. As the owner of the property, Beth Tfiloh had a duty to keep Plaintiff safe on its premises. As the employer of Mr. Ronkin and the other people working inside, Beth Tfiloh had a duty to adequately train, monitor, and supervise them and to ensure that they did not present a danger to each other or invitees. And as Mr. Ronkin's supervisors and coworkers, Beth Tfiloh's employees had a duty to act responsibility for the protection of Plaintiff while he was inside the building.

77. Under the circumstances, a reasonable employer, supervisor, or co-worker should have been concerned about Plaintiff. Concerned that he was being sexually abused, concerned that he was being subjected to inappropriate physical contact, or concerned that there was an inappropriate relationship here. At the very least, a reasonable employer, supervisor, or co-worker would have been on inquiry notice and required to report what was going on to leadership so that additional information could be learned.

78. Beth Tfiloh and its leadership and employees were also under an obligation to report potential sexual abuse to local law enforcement. Maryland's mandatory reporting law went into effect years before this abuse and it was intended protect children like Plaintiff.

79. Mr. Ronkin was also sexually abusing at least one other child in the same or similar way. Mr. Ronkin told Plaintiff that he was abusing at least one other boy in a similar manner. This makes it even worse for Beth Tfiloh, its leaders, and its employees.

80. Beth Tfiloh and its leadership and employees either suspected that Mr. Ronkin was acting inappropriately and did nothing about it, or they were completely oblivious to what any

reasonable person should have seen and acted upon. Either way, Beth Tfiloh is responsible for the abuse that occurred.

81. Beth Tfiloh Congregation of Baltimore City, Inc. also owed other duties to Plaintiff. It owed a duty to exercise care in the selection, hiring, retention, training, monitoring, and supervision of Mr. Ronkin and its other employees who worked at Beth Tfiloh. If Mr. Ronkin was sexually abusing one child, and potentially more, on premises, then it was likely that a reasonable background investigation, calls to prior employers and supervisors, or other reasonable inquiries would have identified prior similar occurrences. And Mr. Ronkin was allowed to repeatedly walk a 12-year-old boy through the building, take him into his office, and sexually assault him while his supervisors were present. At the very least, there was a fundamental failure of monitoring and supervision here.

82. Beth Tfiloh was co-located with a school, presenting a potentially attractive environment for a child predator. This would have imposed a duty to adopt and enforce rules, controls, and safeguards for the protection of children on the premises.

83. And, under Maryland law, Beth Tfiloh and its employees were required to report any incidents that suggested the potential for child abuse or child sexual abuse. The purpose of mandatory reporting laws for people in this environment was to protect children in Plaintiff's position.

84. Beth Tfiloh Congregation of Baltimore City, Inc., directly and by and through its actual and apparent agents, servants, and employees, including its leaders and decisionmakers and its supervisors, managers, and other workers (coworkers), had the power, ability, responsibility, and authority to ensure that they were properly monitoring and supervising what was going on, and taking other precautions to ensure that Plaintiff and other children were not being groomed,

touched, or sexually abused. Despite this, they never reported, investigated, and/or properly acted upon this information.

85. The actions and omissions described above caused Plaintiff to suffer severe and lasting injuries and damages, including mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life. Decades later, Plaintiff still suffers the scars of the sexual abuse that Defendants subjected him to by their actions and omissions.

**COUNT I – NEGLIGENCE**
**(Corporate Negligence – State Defendants)**

86. The Plaintiff adopts and incorporates each paragraph above as if fully enumerated herein.

87. The State Defendants owed the Plaintiff a duty of reasonable care to protect the Plaintiff from abuse while the Plaintiff was committed to the Defendants' care and custody.

88. The State Defendants owed the Plaintiff a heightened duty of care because it had a special relationship with the Plaintiff and affirmatively took actions to care for and protect the then minor Plaintiff, including ensuring that the Plaintiff was safe and protected while in their own custody.

89. The State Defendants' duty to the Plaintiff continued at all times while the Plaintiff was in the foster care system.

90. The State Defendants had a duty to ensure that its foster system was reasonably designed to protect children from abuse and neglect, and to identify, fix and correct any deficiencies that they knew, or should have known, placed children at risk for abuse and neglect.

91. The State Defendants breached these duties owed to the Plaintiff.

92. The State Defendants had system-wide safety gaps that placed children at risk for abuse and neglect, including:

a. Failing to have appropriate recordkeeping to timely detect, report, and prevent abuse;

b. Failing to complete records to detect, report and prevent abuse;

c. Failure to keep and maintain records to detect, report and prevent abuse;

d. Failing to maintain minimal standards for regular face to face contact with children;

e. Failing to obtain criminal background checks on the foster families where children were placed;

f. Failing to have well child examinations and reports;

g. Failing to have medical examinations of children;

h. Failing to ensure that children were attending school;

i. Failing to provide the necessary resources necessary for caseworkers and other works to perform their job duties;

j. Failing to adequately screen foster care families;

k. failing to take reasonable measures to ensure that policies and procedures to prevent child sex abuse were effectively implemented;

l. failing to enforce policies and procedures to prevent child sex abuse of Plaintiff;

m. failing to adequately inform and teach children, including the Plaintiff, of the right to be placed in a foster home where Plaintiff would not have to be subjected to sexual abuse;

n. Failing to monitor children, including Plaintiff, for signs that child sex abuse was occurring at foster homes;

o. Failing to properly screen prospective foster parents and their families;

p. Failing to provide adequate resources to ensure the safety of children, including the Plaintiff;

q. Failing to train their representatives, agents and employees properly to identify and report signs of child abuse and child sex abuse by fellow employees and foster parents;

r. Failing to fulfill their duty to investigate and then terminate a foster care placement when children were being abused;

s. Failing to fulfill their duty to report child sex abuse, including to law enforcement authorities;

t. Failing to investigate suspected child sex abuse;

u. Failing to test their safety procedures;

v. Failing to conduct in person follow-up meetings / interviews / investigations at the actual foster care home;

w. Failing to adhere to the applicable standard of care for child safety; and

x. Failing to otherwise exercise applicable standards of care to assure the safety of children, including the Plaintiff.

93. While not all of these safety gaps may have applied directly to this Plaintiff and the abuse that occurred with Mr. Dean, they are nevertheless are indicative of the overall safety failures that existed within the State Defendants' foster care system at the time. The State Defendants' actions and omissions created a foreseeable risk of egregious harm to children in the foster care system, including the Plaintiff.

94. The sexual abuse and resulting injuries to the Plaintiff was caused by the negligent actions and inactions of Defendants, including in the Defendants' overall operation and management of the foster care system, including in Baltimore City, and that the Defendants knew, or should have known, had system wide gaping holes that placed children at risk for abuse and neglect and which the Defendants never undertook the appropriate actions to correct. This includes social workers having complete, private, and unfettered access to children outside of designated areas.

95. Other social workers were doing the same thing with other children. In other words, this was not a one-off situation.

96. The State Defendants knew, or should have known, that social workers were taking children out of foster homes and taking them to private settings where abusive practices could take place – in other words – to settings where children were at risk for abuse and neglect.

97. Families should have been advised by the State Defendants that this was not to occur. State Defendants' employees should have been advised to report these practices. This safety gap, plus others, allowed social workers, like Mr. Dean, to sexually prey upon children within the foster care system.

98. As a result of the Defendants' negligence, the Plaintiff was sexually abused and suffered severe, lasting, and permanent injuries and damages in the past and expected in the future, including, but not limited to, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of medical and psychological treatment, therapy, and counseling, and other mental health treatment, as well as impaired earnings and earning capacity resulting from the trauma.

WHEREFORE, the Plaintiff demands judgment against the Defendants jointly in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

**COUNT 2**
**Vicarious Liability (State Defendants – Actions of Non-Abuser Agents)**

99. The Plaintiff adopts and incorporates all foregoing facts and allegations as if fully stated in this Count.

100. During all pertinent times, the State Defendants had a duty to ensure that they had appropriate safeguards in place to protect children from abuse in their foster care system

101. Those duties include those previously outlined, but include and are not limited to: ensuring the foster care family would provide a safe environment that was free from the threat of sexual abuse, assault, and exploitation, properly investigating foster care families (including ensuring appropriate background checks were completed), appropriately hiring, training, overseeing and monitoring of its employees and agents, providing appropriate of staffing levels to ensure children's safety, having appropriate resources in place for staff to perform their jobs, having appropriate processes in place to monitor, investigate, report and act upon grievances and/or incidents, including incidents of abuse, to ensure systems were in place to prevent children from being placed with sexual predators, to have in place appropriate standards, including written protocols, to govern the operation of the foster care system, including to prevent and detect sexual abuse, assault or exploitation, to remove children from problematic families, and to otherwise ensure that the foster care system was designed and operating in a manner that protected children from abuse and neglect.

102. These duties fell upon the State Defendants' leaders, supervisors and other agents in a position of authority and/or in charge of overseeing the foster care system over the pertinent time period, and other employees who were acting within the scope of their employment.

103. For decades, the State Defendants, including through their agents, servants and employees acting within the scope of their employment, breached their above duties in that they created and maintained a system that they knew, or should have known, contained numerous safety gaps that placed children at risk for abuse and neglect.

104. In addition, the State Defendants are vicariously liable for the negligent acts of its agents and employees who were directly charged with creating a system that permitted social workers to have complete, private, and unfettered access to children in the foster care system. This permitted social workers, like Ed Dean, to take children, like the Plaintiff, into his custody – including being able to take children, like the Plaintiff, to his private residence – with absolutely no oversight at all.

105. The Defendants are vicariously liable for the negligent acts of its agents, servants and employees.

106. As a direct and proximate cause of the State Defendants' negligence, including that of their agents, servants and employees, the Plaintiff was sexually abused and suffered other injuries and damages.

107. As a result of the abuse the Plaintiff sustained, the Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from the trauma.

WHEREFORE, the Plaintiff demands judgment against the State Defendants in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

**COUNT 3**
**(State Defendants)**
**<u>Vicarious Liability – Scope of Employment of the Plaintiff's Abuser</u>**

108. The Plaintiff adopts and incorporates herein all preceding paragraphs.

109. At all relevant times, the Plaintiff's abuser, Ed Dean, was acting as the employee, servant, or agent, actual or apparent of the State Defendants, and was at all relevant times acting within the scope of the abuser's employment and/or agency.

110. The abuser's perpetrated tortious acts of sexual, emotional, and psychological abuse on the Plaintiff in the manners described herein.

111. Although the Plaintiff's abuser was not retained for the express purpose of perpetrating sexual abuse, the conduct nevertheless was done in the scope of their employment or agency with the State Defendants.

112. The State Defendants retained individuals to educate, to teach, to spend time with, to entertain, befriend, supervise, care for, counsel and/or help rehabilitate and care for children in the foster care system. In particular, these individuals were retained in order to further the mission that the State Defendants represented was being provided to children within the foster care system.

113. The acts of abuse described herein occurred in the context of the State Defendants' mission.

114. The Defendants ARE vicariously liable for the negligent and intentional acts and omissions of their employees, servants or agents, actual or apparent, including Mr. Dean, who perpetrated abuse on the Plaintiff.

115. In addition, the Plaintiff's abuser, Ed Dean, was negligent in that he failed to seek the professional help for his pedophilia and failed to report his pedophilia to his employers as part of his scope of employment. The State Defendants are additionally vicariously liable for the negligence of the Plaintiff's abuser for his failure to seek treatment and also his failure to report his pedophilia to the State Defendants.

116. As a result of the abuse the Plaintiff sustained, the Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from the trauma.

WHEREFORE, the Plaintiff demands judgment against the State Defendants in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

## COUNT 4
## NEGLIGENT HIRING, TRAINING, MONITORING AND RETENTION AGAINST THE STATE DEFENDANTS

117. The Plaintiff adopts and incorporates each paragraph above as if fully enumerated herein.

118. The State Defendants owed the Plaintiff a duty to use reasonable care in the evaluation, selection, and hiring of its employees, including Mr. Dean. Once hired, the State Defendants maintained a duty to the Plaintiff to appropriately train, monitor and supervise its employees, including Mr. Dean.

119. This duty of care arises from the State Defendants' special relationship to foster care children, including the Plaintiff, as a custodian, tasked with the legal obligation to ensure child safety through reasonable measures of employee hiring, training, monitoring, supervision and oversight.

120. Throughout the pertinent time period, the State Defendants knew that there were gaping holes in the foster care system that its agents and employees implemented. These

employees were either unfit to implement appropriate safeguards to start with and/or were unfit to understand the changes that were needed within the system to fix the gaping safety problems that placed children at risk for abuse and neglect. These individuals should never have been hired.

121. In addition, throughout the pertinent time period, the State Defendants knew, or should have known, that its agents and employees were failing to correct the systemic problems that existed within the foster care system, including in Baltimore City, that placed children at risk for abuse and neglect. In other words, there was a failure to train, oversee and monitor the State Defendants' agents who were directly responsible for the overall oversight and operation of the foster care system.

122. The State Defendants knew, or should have known, that the agents and employees that it did hire were not appropriately hiring, overseeing and monitoring its social workers – like Mr. Dean - including whether they had criminal convictions, prior arrests, civil allegations, or personal histories evidencing a propensity to commit abuse or neglect, or other histories that would indicate they were unfit to be social workers, and/or that would render them unfit to supervise or care for foster children, including the Plaintiff.

123. The Defendants knew, or should have known, that the agents and employees that it did hire were appropriately following-up with children, including the Plaintiff, in foster care homes, including not having face to face meetings, having cursory follow-ups, not appropriately investigating reports of abuse or neglect, failing to adequately complete reports of abuse and neglect, failing to adequately report abuse and neglect, and otherwise failing to ensure the continued safety of children, including the Plaintiff, once placed in foster homes.

124. Defendants failed to take meaningful steps to train and monitor and supervise its personnel and to investigate reports of abuse, including with those assigned to oversee children placed foster families.

125. The same is true for Mr. Dean – on information and belief, the State Defendants failed to appropriately screen Mr. Dean, failed to appropriately monitor and oversee is actions during the course of his employment with the State Defendants. It is unthinkable that, within the framework of the State Defendants' foster care system, that Mr. Dean could privately take the Plaintiff to his own residence to abuse him, could introduce the Plaintiff to other people that Mr. Dean is believed to have been romantically involved with - and then who began abusing the Plaintiff. Any meaningful oversight and monitoring of Mr. Dean's activities would have prevented and/or uncovered what was occurring.

126. The State Defendants breached the duties owed to Plaintiff by failing to exercise reasonable standards of care to ensure child safety in their hiring, training, and supervision of its agents, including but not limited to those agents of the State Defendants directly assigned to screen, monitor and oversee Mr. Dean who the State Defendants knew, or should have known, were not appropriately carrying out their job duties to protect children from abuse.

127. The State Defendants' negligent hiring, training, monitoring and supervision of its agents and employees – including Mr. Dean - was a direct and proximate cause of the Plaintiff's injuries and damages.

128. As a direct and proximate result of the State Defendants' negligence, the Plaintiff was sexually abused and the Plaintiff suffered severe and lasting injuries and damages, including, without limitation to, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of

life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from the trauma.

**WHEREFORE**, the Plaintiff demands judgment against the State Defendants in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

**COUNT 5**
**(BREACH OF FIDUCIARY DUTY AGAINST THE STATE DEFENDANTS)**

129. The Plaintiff adopts and incorporates all foregoing facts and allegations as if fully stated in this Count.

130. At all relevant times, the State Defendants were in a fiduciary relationship with the Plaintiff and owed a fiduciary duty to the Plaintiff.

131. The State Defendants fostered Plaintiff's trust and dependency on them throughout their relationship.

132. As Plaintiff's fiduciary, the State Defendants were bound to act with due regard for the best interests of the Plaintiff.

133. The State Defendants breached their fiduciary duty to Plaintiff by:

a. Failing to act in the then minor Plaintiff's best interest at all times;

b. Failing to prioritize the then minor Plaintiff's welfare and well-being at all times;

c. Failing to have appropriate measures in place to protect the then minor Plaintiff from abuse;

d. And in other ways.

134. Plaintiff placed his/her trust and confidence in the State Defendants as a fiduciary and relied upon the State Defendants to act in Plaintiff's best interest.

135. As a direct and proximate result of the State Defendants' breach of its fiduciary duty owed to Plaintiff, the Plaintiff was allowed to be taken by the Defendants' social worker, Ed Dean, out of his foster care setting to inappropriate places where he was sexually abused in the manner described herein.

136. As a direct and proximate result of the State Defendants' breach of its fiduciary duty owed to Plaintiff, the Plaintiff was sexually abused and was caused to suffer severe, lasting, and permanent injuries and damages in the past and expected in the future, including, but not limited to, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of medical and psychological treatment, therapy, and counseling, and other mental health treatment, as well as impaired earnings and earning capacity resulting from the trauma, and other injuries and damages.

WHEREFORE, Plaintiff demands judgment against the State Defendants in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and jury, and allowable under the law.

COUNT 6
<u>Vicarious Liability for Abuser – BETH TFILOH</u>

137. Plaintiff incorporates all of the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

138. Gerald Ronkin worked at Beth Tfiloh, and was acting as its actual and apparent agent, servant, and employee at all times relevant to this cause of action.

139. As a direct and proximate cause and result of these acts and omissions, Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries,

suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from their trauma. These injuries are continuing and ongoing, and are expected to affect Plaintiff for the remainder of his life.

WHEREFORE, Plaintiff demands judgment against Defendants, Beth Tfiloh Congregation of Baltimore City, Inc., jointly and severally, in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

COUNT 7
Vicarious Liability for Abusers' Supervisors, Managers, and Co-Workers – BETH TFILOH

140. Plaintiff adopts and incorporates all of the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

141. Beth Tfiloh Congregation of Baltimore City, Inc. was the actual and apparent principals, masters, employers of the leaders, supervisors, and managers who were present when Mr. Ronkin was engaging in this pattern of behavior and were responsible for supervising and monitoring Mr. Ronkin's while he was at work. These people had a duty to properly monitor and supervise him and the other people under them, and a non-delegable duty to prevent Plaintiff and other children under their joint care and control to be abused.

142. Beth Tfiloh Congregation of Baltimore City, Inc. were also the actual and apparent principals, masters, employers of the other people who worked alongside Mr. Ronkin at Mr. Ronkin, referred to herein as "co-workers." These people were educators, human service workers, teachers, counselors, social workers, and/or staff members or professional employees of a child care institution, school, parochial or private educational institution, juvenile service institution, or other such similar institution or facility as those terms are used in Family Law § (g). These people

were legally obligated to notify and make an oral or written report to the local department or local law enforcement agency if they had reason to believe that a child had been subjected to physical, mental, or sexual abuse pursuant to the Maryland Child Abuse Act, which was in affect at all times relevant to this cause of action. They were also responsible for protecting the minor children under their care, custody, and control and preventing Mr. Ronkin or any other adult from illegally, sexually, physically, and emotionally abusing Plaintiff and the other minor children.

143. These actual and apparent agents, servants, and employees – the supervisors, managers, and coworkers – were on notice of sufficient information that they were obligated to act, including reporting this information to their supervisors or managers, and if that did not work, to report this information to people further up the corporate chain of command until someone acted upon the information.

144. Beth Tfiloh Congregation of Baltimore City, Inc.'s actual and apparent agents, servants, and employees, breached their duty of care to Plaintiff and were negligent in the following ways:

a. by allowing Mr. Ronkin and/or others to have close contact with Plaintiff and potentially other children and to illegally, sexually, and emotionally abuse him and them;

b. by failing to adequately monitor and supervise Mr. Ronkin, which allowed Plaintiff to be sexually abused and injured;

c. by failing to report, investigate, and react to inappropriate conduct, sexual abuse, emotional abuse, and physical abuse, actions that would have prevented Plaintiff from being sexually abused and injured;

d. by providing Mr. Ronkin and others private physical spaces in which to commit abuse on Plaintiff and potentially other minor children;

e. by permitting Mr. Ronkin and others to consistently and repeatedly spend time alone, unsupervised, in private spaces with Plaintiff and potentially other minor children, despite knowledge that such actions had the potential to facilitate, foster, and enable improper contact and child sexual abuse;

f. by failing to recognize that sexual abuse was occurring, or was likely to occur;

g. by failing to recognize the signs and suggestions of inappropriate conduct, including sexual abuse, and failing to take reasonable steps to prevent it from happening to Plaintiff or anyone else;

h. by failing to thoroughly investigate the potential for illegal, sexual, and emotional abuse after having actual or constructive knowledge of inappropriate conduct, including sexual abuse;

i. by failing to notify parents, guardians, children, or law enforcement authorities of allegations and instances of inappropriate conduct, including sexual abuse, of which they were or should have been aware;

j. by failing to conduct substantive inquiries into reports of inappropriate conduct, including sexual abuse;

k. by failing to act when they had actual or constructive knowledge of inappropriate conduct, including sexual abuse;

l. by failing to provide a safe environment that was free from the threat of sexual abuse, assault, and exploitation;

m. by failing to follow rules, policies, procedures, and standards to prevent sexual abuse, assault, or exploitation;

n. by creating an environment in which sexual abusers felt empowered to work and injure Plaintiff and other minor children;

o. by failing to terminate an agent, servant, or employee who demonstrated unfitness, unsafe, unusual, or inappropriate behavior;

p. by failing to protect Plaintiff from illegal, sexual, physical, and emotional abuse; and

q. in other ways.

145. As a direct and proximate cause and result of this negligence, Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of

the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from their trauma. These injuries are continuing and ongoing, and are expected to affect Plaintiff for the remainder of his life.

WHEREFORE, Plaintiff demands judgment against Defendants, Beth Tfiloh Congregation of Baltimore City, Inc., jointly and severally, in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

COUNT 8
Corporate Negligence – BETH TFILOH

146. Plaintiff adopts and incorporates all of the facts and allegations contained in all preceding paragraphs as if it were fully set forth herein.

147. Beth Tfiloh Congregation of Baltimore City, Inc. owed Plaintiff a duty for a number of reasons.

148. Beth Tfiloh Congregation of Baltimore City, Inc. selected Mr. Ronkin to work at Beth Tfiloh, and allowed him to continue to work there during the time he sexually abused Plaintiff. Beth Tfiloh knew or should have known that a pedophile might covet a job or roles like this one, given that pedophiles had been involved in similar incidents in other schools and religious environments. Defendants, knew or should have known that it was necessary to exercise the highest level of care in the selection of a competent and fit person for that job. Based on the nature of the relationship and circumstances presented, this duty extended to Plaintiff and other members of the general public who would reasonably be expected to come into contact with the person hired.

149. And Beth Tfiloh Congregation of Baltimore City, Inc. owed a duty to Plaintiff and others to exercise reasonable care as Mr. Ronkin's actual and apparent principal, master, and

employer. This included the power, ability, responsibility, and authority to hire, train, supervise, oversee, and terminate any agent, servant, or employee for unfit, unsafe, unusual, or inappropriate behavior relating to minor children, including Plaintiff.

150. Prior to and during the time Plaintiff was sexually abused, Beth Tfiloh had sufficient information about Mr. Ronkin's conduct and behavior to initiate a thorough investigateion, report him to local law enforcement agencies, and take other reasonable actions to protect the children in its care, custody, and control. If they had acted appropriately, they would have identified Mr. Ronkin as dangerous and prevented him from working for them or causing Plaintiff harm.

151. Despite their knowledge, Beth Tfiloh Congregation of Baltimore City, Inc., directly and by and through its officers and employees, failed to satisfy these duties, in the following ways:

a. by failing to undertake a reasonable inquiry into the background of Mr. Ronkin, interview prior employers or supervisors, conduct background checks, or take other reasonable steps given the circumstances presented at the time of hire; if they had, they would have known that he should not have been hired or allowed to work with Plaintiff or other minor children;

b. by failing to undertake a reasonable inquiry into the background of Mr. Ronkin, interview prior and current supervisors and coworkers, conduct follow-up background checks, terminate him, or take other reasonable steps given the circumstances presented during the time of employment; if they had, they would have known that he should have been terminated and not allowed to work with Plaintiff or other minor children;

c. by failing to properly train their actual and apparent agents, servants, and employees regarding appropriate and inappropriate behavior, recognizing signs of inappropriate behavior, reporting concerning behavior, reporting inappropriate behavior and abuse, handling abuse reports, investigating abuse reports, and acting to protect Plaintiff and other minor children in their care;

d. by failing to adopt, follow, and enforce explicit, publicized, and reinforced policies banning sexual abuse which provided an effective definition of appropriate and inappropriate behavior and prevented inappropriate behavior, sexual abuse, emotional abuse, and physical abuse;

e. by failing to adequately monitor and supervise Mr. Ronkin and their other actual and apparent agents, servants, and employees who were responsible for Plaintiff and other minor children;

f. by failing to report, investigate, and react to inappropriate conduct, sexual abuse, emotional abuse, and physical abuse;

g. by providing Mr. Ronkin and others private physical spaces in which to commit abuse;

h. by permitting Mr. Ronkin and others to consistently and repeatedly spend time alone, unsupervised, in private spaces with Plaintiff and other minor children, despite knowledge that such privacy facilitated, fostered, and enabled child sexual abuse;

i. by failing to recognize that sexual abuse was occurring, or was likely to occur;

j. by failing to recognize the signs and suggestions of inappropriate conduct, including sexual abuse, and failing to take reasonable steps to prevent it from happening to Plaintiff or anyone else;

k. by failing to notify parents, guardians, children, or law enforcement authorities of allegations and instances of inappropriate conduct, including sexual abuse, of which it was or should have been aware;

l. by failing to conduct substantive inquiries into reports of inappropriate conduct, including sexual abuse;

m. by failing to act when they had actual or constructive knowledge of inappropriate conduct, including sexual abuse;

n. by failing to provide a safe environment that was free from the threat of sexual abuse, assault, and exploitation;

o. by failing to adopt and enforce adequate rules, policies, procedures, and standards to prevent sexual abuse, assault, or exploitation;

p. by creating an environment in which sexual abusers felt empowered to work and injure Plaintiff and other minor children;

q. by failing to terminate any agent, servant, or employee who demonstrated unfitness, unsafe, unusual, or inappropriate behavior; and

r. by failing to protect Plaintiff and other minors from illegal, sexual, physical, and emotional abuse; and

s. in other ways.

152. As a direct and proximate cause and result of this negligence, Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from their trauma. These injuries are continuing and ongoing, and are expected to affect Plaintiff for the remainder of his life.

WHEREFORE, Plaintiff demands judgment against Defendants, Beth Tfiloh Congregation of Baltimore City, Inc., jointly and severally, in an amount exceeding $75,000 and to be determined by a jury, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

COUNT 9
Intentional Infliction of Emotional Distress – BETH TFILOH

153. Plaintiff adopts and incorporates all of the facts and allegations contained in the preceding paragraphs as if they were fully stated in this Count.

154. The other explanation for the failure of Beth Tfiloh and its agents, servants, and employees to act here is that they knew that Mr. Ronkin had or was sexually abusing children at Beth Tfiloh and they intentionally decided not to act because acting would have opened them up to litigation and harm their reputations and economic interests.

155. This explanation cannot be discounted. Similar acts of abuse and intentional decisions not to act have happened at religious institutions across the U.S. and world.

156. Plaintiff intends to conduct discovery on this issue and develop additional facts related to this claim. If there is no evidence to support it, Plaintiff will not pursue it. At this point, however, Plaintiff is pursuing a claim for intentional infliction of emotional distress.

157. Assuming that Defendant was aware that Mr. Ronkin was abusing children or abusing Plaintiff before or during the time the abuse at issue was occurring, and chose not to report him or act for fear of its impact on the synagogue, its leaders, or others, this would have to have been an intentional decision made knowing that doing nothing would likely cause Plaintiff and other children to be sexually abused, injured, and harmed. It would have been intentional, reckless, and in deliberate disregard of the physical and emotional damage that it was likely to cause Plaintiff. It would have been extreme, outrageous, and beyond the bounds of decency in society. And it would have constituted malicious, willful, and intentional, and amounts to actual malice.

158. As a direct and proximate cause and result of these actions, Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from their trauma. These injuries are continuing and ongoing, and are expected to affect Plaintiff for the remainder of his life.

WHEREFORE, Plaintiff demands judgment against WHEREFORE, Plaintiff demands judgment against Defendants, Beth Tfiloh Congregation of Baltimore City, Inc., jointly and severally, in an amount exceeding $75,000 and to be determined by a jury, and for punitive damages in the amount of $2,000,000, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

COUNT 10
Assault, Battery, and Intentional Tort – MR. RONKIN

159. Plaintiff adopts incorporates all facts and allegations contained in the preceding paragraphs as if fully set forth in this Count.

160. Mr. Ronkin had inappropriate, improper, illegal, and nonconsensual physical and sexual contact with Plaintiff when Plaintiff was a minor and under Mr. Ronkin's possession, custody, and care.

161. Plaintiff did not consent and could not have consented to this unwanted contact and abuse given his age and the circumstances presented.

162. These actions were intentional and performed knowing that they would cause Plaintiff to suffer harm.

163. These actions were intentional, reckless, and in deliberate disregard of the physical and emotional damage that it was likely to cause Plaintiff.

164. These actions were extreme, outrageous, and beyond the bounds of decency in society.

165. And these actions were malicious, willful, and intentional, and they amounted to actual malice.

166. As a direct and proximate result of these actions, Plaintiff suffered severe and lasting injuries and damages, including, without limitation, non-economic damages in the form of mental anguish, severe physical, emotional, and psychological injuries, suffering, immense pain, trauma, and loss of enjoyment of life, as well as economic damages in the form of the cost of counseling and other mental health treatment, as well as loss of earning capacity resulting from their trauma. These injuries are continuing and ongoing, and are expected to affect Plaintiff for the remainder of his life.

WHEREFORE, Plaintiff demands judgment against Defendant, Gerald Ronkin, jointly and severally, for compensatory damages in an amount exceeding $75,000 and to be determined by a jury, and for punitive damages in an amount exceeding $10,000,000, together with interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court and allowable under the law.

Prayer For Relief

For all of the foregoing reasons, Plaintiff respectfully requests judgment against Defendants for compensatory damage for all past, present, and future economic and non-economic damages, together with interest, costs, expenses, attorney's fees, and all such further and additional relief as the Court deems just, fair, and appropriate under the circumstances and allowable under the law. Plaintiff also respectfully requests judgment against Defendants for punitive damages for its intentional tort claims.

*/s/Gregory G. Hopper*

Gregory G. Hopper (9912150047)
Bekman, Marder, Hopper, Malarkey & Perlin, L.L.C.
1829 Reisterstown Road, Suite 200
Baltimore, Maryland 21208
Telephone: 410-539-6633
Email: hopper@mdtrialfirm.com

*Attorneys for Plaintiff*

**IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND**

| | |
|---|---|
| **Ricky Keener,**<br><br>Plaintiff,<br><br>v.<br><br>**Beth Tfiloh Congregation of Baltimore City, Inc.,**<br><br>Defendants. | **Case Number:** C-24-CV-25-004925 |

ELECTION FOR JURY TRIAL

Plaintiff, Ricky Keener, by and through his counsel, Gregory G. Hopper, and Bekman, Marder, Hopper, Malarkey & Perlin, L.L.C., hereby demands a trial by jury on all claims and causes of action outlined in this Complaint.

*/s/Gregory G. Hopper*

Gregory G. Hopper (9912150047)
Bekman, Marder, Hopper, Malarkey & Perlin, L.L.C.
1829 Reisterstown Road, Suite 200
Baltimore, Maryland 21208
Telephone: 410-539-6633
Email: hopper@mdtrialfirm.com

*Attorneys for Plaintiff*